## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**SHANNETTE L. TILLA,**

       **Plaintiff,**

    **vs.**                          **Civ. No. 22-04  JFR**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the**
**Social Security Administration,**

       **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

      **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 14) filed March 15, 2022, in support of Plaintiff Shannette L. Tilla's Complaint (Doc. 1) seeking review of the decision of Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits.  On May 10, 2022, Plaintiff filed her Motion to Reverse and Remand For A Rehearing With Supporting Memorandum ("Motion").  Doc. 16.  The Commissioner filed a Response in opposition on July 11, 2022 (Doc. 17), and Plaintiff filed a Reply on July 25, 2022 (Doc. 24).  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and **GRANTED.**  The Commissioner's final decision is reversed and this case is remanded for an **IMMEDIATE AWARD OF BENEFITS.**

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  Docs. 4, 7, 9.

# I.  Background and Procedural Record

Claimant Shannette Tilla ("Ms. Tilla") alleges she became disabled on December 22, 2004, at the age of thirty-two because of a tumor in her spine, back pain, hernia, severe nerve damage, and depression.  Tr. 101, 118, 283.[2]  Ms. Tilla completed three years of college in 1999, and worked as a bartender, disability home caretaker, home health caretaker/supervisor, and a casework supervisor for the State of New Mexico.  Tr. 284, 310-16.  Ms. Tilla reported she stopped working on December 22, 2004, due to her medical conditions.  Tr. 283.   Ms. Tilla's date of last insured is December 31, 2009.[3]  Tr. 1787.  Therefore, to receive disability insurance benefits, Ms. Tilla must show she was disabled prior to that date.  *See Potter v. Sec'y of Health & Human Servs*., 905 F.2d 1346, 1347 (10th Cir. 1990).

On February 11, 2013, Ms. Tilla protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 251-54.  She also protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Tr. 255-60. Ms. Tilla's applications were initially denied on June 20, 2013.  Tr. 100, 101-116, 117, 118-130, 163-66, 167-70.  They were denied again at reconsideration on September 4, 2013.  Tr. 131, 132-45, 147, 148-61, 176-79, 180-83.  On November 5, 2013, Ms. Tilla requested a hearing before an Administrative Law Judge ("ALJ").  Tr. 184-85.  ALJ Eric Weiss conducted a hearing on July 16, 2015.  Tr. 35-94.  Ms. Tilla appeared in person at the hearing with attorney representative Michael Armstrong.  *Id*.  The ALJ took testimony from Ms. Tilla, from Ms. Tilla's husband, David Lee, and

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 14) that was lodged with the Court on March 15, 2022.

[3] To qualify for DIB, a claimant must establish that he met the statutory requirements for disability on or before her date of last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

from an impartial vocational expert ("VE").  On September 10, 2015, ALJ Eris Weiss issued a partially favorable decision, finding that Ms. Tilla was not disabled at any time through December 31, 2009, her date last insured, but that she became disabled on October 30, 2013. Tr. 13-29.  On November 18, 2016, the Appeals Council issued its decision denying Ms. Tilla's request for review and upholding the ALJ's final decision.  Tr. 1-3.  On January 18, 2017, Ms. Tilla timely filed a Complaint seeking judicial review of the Commissioner's final decision.  USDC NM Civ. No. 17-93 KK  (Doc. 1).

On May 8, 2018, Magistrate Judge Kirtan Khalsa, Presiding by Consent, remanded the case for further consideration.  Tr. 1087-1104.  She found that the ALJ failed to apply the proper legal standards in determining Ms. Tilla's onset of disability and that the ALJ should have called on the services of a medical advisor in determining the onset date because the medical evidence was ambiguous.  Tr. 1099.  Judge Khalsa further found that "[t]he ALJ also failed to discuss and consider relevant evidence that creates the possibility that Ms. Tilla's physical and mental impairments were disabling prior to her date of last insured."  *Id.*  Judge Khalsa remanded for a rehearing.  Tr. 1104.

On remand, ALJ Weiss held a second hearing on February 25, 2019.  Tr. 1042-82.  He took testimony from Ms. Tilla, who appeared with counsel, from her husband David Lee, and from medical advisors Dr. Alvin Stein and Dr. Ira Hymoff.  *Id.*  On April 4, 2019, ALJ Weiss issued another partially favorable decision.  Tr. 1012-34.  He again found that Ms. Tilla was not disabled prior to October 30, 2013, but became disabled on that date and continued to be disabled through the date of the decision.  *Id.*  However, this finding of disability resulted in no entitlement to benefits because Ms. Tilla's date last insured is December 31, 2009, and her household income precluded entitlement to benefits under Title XVI.  Tr. 1019.  Ms. Tilla did not seek review from

the Appeals Council and filed a timely appeal with the Court on June 10, 2019.  USDC NM Civ.

No. 19-532 SCY (Doc. 1).

On August 7, 2020, Magistrate Judge Steven Yarbrough, Presiding by Consent, remanded

the case for further consideration.  Tr. 1614-25.  He found that the ALJ erred in failing to consider

and assign weight to the opinion of examining psychologist Steven K. Baum, Ph.D.[4]  Tr. 1620-24.

Judge Yarbrough explained that a reasonable factfinder could find that Dr. Baum was faithful to the

form's instructions to opine on Ms. Tilla's condition since 2009, and that his opinion was about

Ms. Tilla's mental health disorders prior to 2013.  Tr. 1624.  Although Ms. Tilla requested that the

Court order the payment of benefits outright rather than remand for rehearing, Judge Yarbrough

remanded for a rehearing and that a different ALJ be assigned to the case.  Tr. 1624-25.

---

[4] Dr. Baum performed a clinical interview, reviewed medical records, administered tests, and wrote a report on January 11, 2019.  Tr. 1394-99.  Dr. Baum estimated that Ms. Tilla has a learning disability and assessed her with an anxious mood and blunted/depressed affect, but found her knowledge, judgment, and insight to be intact or fair.  Tr. 1394. As relevant to Ms. Tilla's pre-2013 disability claim, he reviewed Presbyterian ER records from 2004 that diagnosed "anxiety" and "adjustment w/depressed mood"; UNM records from 2009 to 2011 that diagnosed "anxiety, depression, pain/GBS, OSA"; and First Choice records from 2009 to 2013 that diagnosed anxiety, depression, PTSD, pain/GBS.  Tr. 1395. Dr. Baum concluded:

> There is a preponderance of evidence supporting the diagnoses of anxiety, depression and pain/GBS with all sources citing examples, medication treatment or diagnosis directly. . . . There is less confirmation of the PTSD diagnosis through providers from 1st Choice and Epoch, social worker Lopez and CE reports from DeBernardi agree.  When I saw the claimant, she reported that she had so much physical pain, that she could no longer feel her psychological pain from childhood. This is consistent with someone who has adjusted to her psychiatric impairment as identified by the MMPI correlate of "psychotic adjustment." . . . This MMPI correlate may explain in part why previous providers failed to identify the thought disorder. She simply may have grown used to their presence or it was dwarfed by disorder[] stemming from a pathological childhood and adolescence. In terms of neurocognitive disorder, she is mildly disordered with a likely learning disorder in math. Relative to her clinical functioning, her impaired cognitive status is the least of her problems--though this function will likely decline as her psychopathy progresses.

Tr. 1395.  Dr. Baum also completed a *Medical Assessment of Abilities to Do Work-Related Activities (Mental)* that instructed him to consider the patient's medical history and chronicity of findings as from December 31, 2009 to current examination.  Tr. 1401.  In understanding and memory, he found 2 moderate and 1 marked limitation.  *Id.*  In sustained concentration and persistence, he found 1 slight, 3 moderate, and 4 marked limitations.  *Id.*  In social interaction, he found 3 moderate and 1 marked limitation.  Tr. 1402.  In adaption, he found 1 slight, 2 moderate, and 1 marked limitation.  *Id.* He did not find that she met the criteria for listing 12.06 anxiety disorders, Tr. 1404, but found she met listing 12.08 personality disorders and 12.15 trauma/stress disorders, Tr. 1405-07.

In accordance with the District Court order, the Appeals Council issued an order on April 8, 2021, remanding the case to an ALJ.  Tr. 1628.  The Appeals Council affirmed the finding of disability as of October 13, 2013, as supported by substantial evidence.  *Id.*  The Appeals Council, therefore, vacated ALJ Weiss's decision only with respect to the issue of disability prior to October 30, 2013, and remanded the case for further proceedings.  *Id.*  The Appeals Council directed that the case be assigned to another ALJ.  *Id.*  Ms. Tilla's case was assigned to ALJ Jennifer Fellabaum, who held a third hearing on September 2, 2021.  1550-82.  ALJ Fellabaum took testimony from Ms. Tilla, who appeared with counsel, and from a VE.  *Id.*  On November 2, 2021, ALJ Fellabaum issued an unfavorable decision.  Tr. 1516-40.  Ms. Tilla did not seek review from the Appeals Council and filed a timely appeal with the Court on January 4, 2022.  Doc. 1.

## II.  Applicable Law

### A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

---

[5] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.  *Id.*  Gainful work activity is work activity that you do for pay or profit.  20 C.F.R. §§ 404.1572(b), 416.972(b).

(2)     At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)     At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987).  The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933

F.2d 799, 801 (10th Cir. 1991).

B.     **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the

decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal

standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214

(10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at

800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor

substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th

Cir. 2008).  A decision is based on substantial evidence where it is supported by "relevant evidence

. . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at

1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in

the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,*

966 F.2d 1371, 1374 (10th Cir. 1992).  The agency decision must "provide this court with a

sufficient basis to determine that appropriate legal principles have been followed." *Jensen v.

Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  Therefore, although an ALJ is not required to

discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the

evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with

sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III.  **Analysis**

The ALJ made her decision that Ms. Tilla was not disabled prior to October 30, 2013, at

step five of the sequential evaluation.  Tr. 1538-40.  The ALJ determined that Ms. Tilla met the

insured status requirements of the Social Security Act through December 31, 2009, and that

Ms. Tilla had not engaged in substantial gainful activity since the alleged onset date.  Tr. 1522. She

found that Ms. Tilla had severe impairments of degenerative disc disease, spinal schwannoma, hernia, obesity, hypoxia, peripheral neuropathy, depression, and anxiety. *Id.* The ALJ also found that Ms. Tilla had nonsevere impairments of diabetes, hypertension, obstructive sleep apnea, and Guillain-Barré syndrome. Tr. 1522—1523. The ALJ determined that since the alleged onset date, Ms. Tilla's impairments did not meet or equal in severity one of the listings described in Appendix 1 of the regulations. (Tr. 20.) As a result, the ALJ proceeded to step four and found that from December 22, 2004, to October 30, 2013, Ms. Tilla had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) and 416.967(a) except

> she could occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl; could never climb ladders, ropes or scaffolds, or be exposed to unprotected heights, hazardous machinery, or concentrated exposure to environmental irritants; could perform simple, routine tasks, with no fast paced productive work; could make simple work decisions; could occasionally interact with co-workers, supervisors, and the general public; and her work should be performed in the same location every day.

Tr. 1525. The ALJ concluded at step four that Ms. Tilla was unable to perform any past relevant work. Tr. 1538. The ALJ then determined at step five that based on Ms. Tilla's age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that Ms. Tilla could perform, and that she was, therefore, not disabled.[6] Tr. 1539-40.

In support of her Motion, Ms. Tilla argues that the ALJ erred by failing to properly weigh the opinions of treating providers CNP Lyn Dawson, LISW Kristen Lopez, and CNP Sheilah Misra. Doc. 16 at 9-23. Mr. Tilla argues this case should be remanded for the immediate payment of benefits. *Id.* at 23-24.

---

[6] The vocational expert testified that Ms. Tilla would be able to perform the requirements of representative occupations such as a Price Tag Ticketer, DOT #209.587-034, which is performed at the light exertional level with an SVP of 2 (131,000 jobs in national economy); a Routing Clerk, DOT #222.687-022, which is performed at the light exertional level with an SVP of 2 (106,000 jobs in the national economy); and a Cafeteria Attendant, DOT #311.677-010, which is performed at the light exertional level with an SVP of 2 (22,000 jobs in the national economy). Tr. 1540.

For the reasons discussed below, the Court finds that the ALJ failed to apply the correct

legal standards when evaluating CNP Dawson's medical opinion and that the ALJ's reasons for

rejecting CNP Dawson's opinion are not supported by substantial evidence. This case, therefore,

requires remand.

### A.   CNP Lyn Dawson

On January 24, 2013, Ms. Tilla began seeing CNP Lyn Dawson of ABQ Health Partners

based on a referral from Maryalyse Adams Mercado, M.D., of First Choice Community Healthcare.

Tr. 750-53. Ms. Tilla reported her several year history of back pain and having been diagnosed

with Guillain-Barré syndrome in January 2005. *Id.* Ms. Tilla complained at her first visit with

CNP Dawson of low back and leg pain, and told CNP Dawson that the neuropathy she developed

from Guillain-Barré syndrome was constant. *Id.* CNP Dawson agreed to help Ms. Tilla with her

pain medications and ordered a new MRI. *Id.* From January 24, 2013, until October 30, 2013,

when CNP Dawson prepared her medical source statement, Ms. Tilla saw CNP Dawson seven

times. Tr. 827-61. Over the course of these seven visits, CNP Dawson diagnosed Ms. Tilla with

lower back pain, idiopathic peripheral neuropathy, incisional hernia, bulging lumbar disc, lumbar

neuritis, lumbar canal stenosis, joint pain, myalgia and myositis, obesity, Guillain-Barré syndrome,

and anxiety. *Id.* The February 19, 2013, MRI CNP Dawson obtained indicated "a 3 cm x 1.2 cm

left foraminal and extra foraminal Schwannoma at L4-L5[;] she also had right greater than left mild

facet arthropathy at this level. At L5-S1 she has a disc protrusion and mild facet arthropathy

resulting in right greater than left nerve effacement/ abutment." Tr. 857. CNP Dawson continued

the medication regimen previously established by Dr. Valerie Carrejo;[7] *i.e.,* Methadone,

---

[7] Ms. Tilla was followed by Valerie Carrejo, M.D., of First Choice Community Healthcare from December 2008 through October 2012 for, *inter alia*, chronic pain management. Tr. 575-76, 725-29, 773-786. Ms. Tilla saw Dr. Carrejo for office visits twenty-one (21) times from December 23, 2008, through October 23, 2012. *Id.* Dr. Carrejo's treatment notes indicate Ms. Tilla's persistent complaints of and treatment for depression and anxiety, as well as for neuropathic pain and

Oxycodone, Ibuprofen, Percocet, Paxil and Effexor.  Tr. 827-61.  CNP Dawson (1) referred

Ms. Tilla for a surgical consult;[8] (2) discussed the possibility of lumbar epidural steroid injections;[9]

and (3) ordered an abdominal brace to help with her "rather large abdominal hernia."[10]  *Id.*

CNP Dawson's treatment notes from October 30, 2013, indicate she assessed Ms. Tilla with

Guillain-Barré syndrome, lumbosacral neuritis, and anxiety.  Tr. 827.  On that same date, CNP

Dawson completed a *Medical Assessment of Ability To Do Work-Related Activities (Physical)* on

Ms. Tilla's behalf.  Tr. 771.  The form instructed CNP Dawson to "consider patient's medical

history and the chronicity of findings as *from 2009 to current examination*."  *Id.* (emphasis added).

CNP Dawson assessed that pain and fatigue associated with Ms. Tilla's history of Guillain-Barré

syndrome, large schwannoma tumor/nerve impingement, and very large abdominal hernia

---

weakness, chronic back pain, and pain related to Guillain-Barré syndrome, left L4-5 foraminal and extraforaminal schwannoma, and abdominal hernia.  *Id.*  Dr. Carrejo referred Ms. Tilla to various specialists, and prescribed Methadone, Oxycodone, Percocet, Paxil and Depakote.  *Id.*  Ms. Tilla did not always follow through with Dr. Carrejo's referrals and explained to Dr. Carrejo that she would get overwhelmed with multiple appointments and needed to focus on one issue at a time.  Tr. 727.

On December 30, 2008, Dr. Carrejo referred Ms. Tilla for continued skilled nursing home wound care.  Tr. 573.  Ms. Tilla developed a wound infection following a Caesarean Section and was initially referred for at home wound care on November 1, 2008, by UNM Physician Erin Lunde, M.D.  Tr. 487.  Ms. Tilla received skilled nursing care at home from November 7, 2008 through March 23, 2009.  Tr. 484, 485-536, 537, 538-39, 540, 548-59, 570, 571, 573, 581-622.  The skilled nursing care notes indicated Ms. Tilla's other risk factors and diagnoses included spinal compression, Guillain-Barré Syndrome, and leg weakness due to "tumor of spine."  Tr. 520, 561, 605.  On March 19, 2009, Dr. Carrejo referred Ms. Tilla for an in-home patient care aide and explained that Ms. Tilla had multiple comorbidities including (1) chronic back pain due to compression fracture of spine and schwannoma (peripheral nerve tumor) in spine; (2) recent Caesarean Section with wound infection that was still healing; (3) anxiety; and (4) morbid obesity.  Tr. 540.  Dr. Carrejo stated that given Ms. Tilla's multiple medical issues and chronic pain, she was unable to take care of her infant and keep up her home alone, and needed basic homemaking services.  *Id.*  Based on Dr. Carrejo's referral, Ms. Tilla had a patient care aide for an average of four hours a day, for four to five days per week, from July 1, 2009, through December 15, 2010.  Tr. 624-711.  The patient care aide did laundry, changed linens, cleaned the kitchen and bathroom, vacuumed and dusted, and straightened the living areas.  *Id.*  The patient care aide's service records frequently included notes indicating that Ms. Tilla was in a lot of pain and bedridden during this time.  Tr. 623, 626-27, 636, 644, 665-69, 678, 684-85, 688, 690, 692, 694, 700, 702-04.

[8] Ms. Tilla opted not to proceed with surgery.  Tr. 852.

[9] Ms. Tilla was afraid of having a lumbar epidural injection and did not go through with it.  Tr. 849.

[10] CNP Dawson noted that Ms. Tilla had pain and limited mobility from an "extremely large abdominal hernia" that could not be operated on at this point because of Ms. Tilla's current weight.  Tr. 830.

10

precluded Ms. Tilla's ability to do work-related physical activities.  *Id.*  Specifically, CNP Dawson assessed that Ms. Tilla could occasionally and frequently lift less than five pounds; that she could stand and/or walk less than two hours in an 8-hour day; that she had to alternate sitting, standing and laying down to relieve pain or discomfort throughout the day; that she had a limited ability to push and/or pull with her lower extremities; that she had manipulation limitations; and that she could never kneel, stoop, crouch and/or crawl.  *Id.*

CNP Dawson saw Ms. Tilla three times in 2014 for ongoing chronic pain management. Tr. 814-26.

ALJ Fellabaum accorded little weight to CNP Dawson's opinion as to the period prior to October 30, 2013, explaining "it is not supported by her findings on physical examinations (13F)[11] and is not consistent with physical exams by other providers from the relevant period (11F)."[12] ALJ Fellabaum further explained that Ms. Tilla was "generally found to have normal strength and gait, no balance issues, and no upper extremity limitations noted other than reported pain with normal shoulder range of motion (4F)."[13]

---

[11] Exhibit 13F is a April 16, 2015, diagnostic record from Upright MRI of New Mexico related to an "MR Lumbar Spine w/wo Contrast."  Tr. 882-883.

[12] Exhibit 11F includes 29 pages of treatment notes prepared by Valerie Carrejo, M.D., from May 7, 2009, through October 11, 2011 (Tr. 773-786), along with various laboratory and diagnostic studies (Tr. 787-800).  *See* fn. 7, *supra*.

[13] Exhibit 4F is an April 11, 2011, Medical Consultant Report prepared by Natavan Karimova, M.D., based on a referral from the New Mexico Department of Rehabilitative Services.  Tr. 716-19.  On physical exam, Dr. Karimova noted, *inter alia*, that Ms. Tilla's abdomen was tender around the abdominal hernia; that cervical flexion extension, rotation and lateral flexion were within normal limits; that claimant refused to do examination of her spine stating it was too painful; shoulder abduction, adduction, forward elevation, internal and external rotation and extension were within normal limits bilaterally, albeit with pain; elbow, hand and ankle range of motion was normal bilaterally; knee extension was within normal limits but flexion was decreased due to morbid obesity; claimant did not participate well with hip examination due to low back pain; claimant refused to walk on her heels and walk on her toes; 5/5 strength in upper and lower extremities; and normal reflexes in upper and lower extremities.  Tr. 718.

Dr. Karimova diagnosed, *inter alia*, pain syndrome and decreased sensation in lower extremities due to Guillain-Barré Syndrome; low back pain due to schwannoma at L4-5; and abdominal hernia.  Tr. 719.  Dr. Karimova nonetheless assessed that Ms. Tilla could perform light exertional work and that if needed she could sit cumulatively up to six hours in an 8-hour day.  Tr. 719.

Ms. Tilla argues the ALJ's reasons for rejecting CNP Dawson's opinion are inadequate. Doc. 16 at 11-14.  To begin, Ms. Tilla argues that the ALJ fails to clarify which of CNP Dawson's physical exam findings do not support her assessment.  *Id.*  Ms. Tilla points out that Exhibit 13F, cited by the ALJ, is an MRI report and does not contain any physical exam findings.  *Id.*  Ms. Tilla further argues that the ALJ fails to acknowledge and discuss that CNP Dawson indicated on the form the bases for her assessment, which included Ms. Tilla's history of Guillain-Barré syndrome, abdominal hernia, and schwannoma/nerve impingement, and that CNP Dawson's treatment notes and objective diagnostics fully support these diagnoses.  *Id.*

Ms. Tilla argues the ALJ's reason for finding CNP Dawson's opinion inconsistent with physical exams by other providers similarly fails to specify which physical exam findings she is relying upon.  *Id.*  Ms. Tilla argues that Exhibit 11F, cited by the ALJ, consists of 29 pages of records from First Choice Community Healthcare.  *Id.*  While the ALJ broadly concludes these records are inconsistent with CNP Dawson's assessment of Ms. Tilla's ability to do work-related physical activities, Ms. Tilla argues the ALJ fails to point to any specific records and that Exhibit 11F contains evidence that is consistent with CNP Dawson's opinion that the ALJ failed to consider and discussion, *i.e.,* that  Dr. Carrejo's treatment notes indicate Ms. Tilla's persistent complaints of and treatment for depression and anxiety, as well as for neuropathic pain and weakness, chronic back pain, and pain related to Guillain-Barré syndrome, schwannoma, and abdominal hernia.  *Id.*

Last, Ms. Tilla argues that the ALJ's reason that Ms. Tilla was "generally found to have normal strength and gait, no balance issues, and no upper extremity limitations noted other than

---

The ALJ accorded significant weight to Dr. Karimova's assessment related to Ms. Tilla's ability to perform work-related physical activities explaining that it was supported by Dr. Karimova's examination, "where claimant exhibited normal strength in the upper and lower extremities with only some limitation with range of motion."  Tr. 1534.  The ALJ did note, however, that Dr. Karimova's assessment did not address nonexertional and environmental limitations related to Ms. Tilla's pain, hypoxia, and obesity.  *Id.*

reported pain with normal shoulder range of motion," is inadequate because the ALJ's reliance on Dr. Karimova's physical exam failed to discuss and account for the entirety of Dr. Karimova's physical findings.  Doc. 16 at 13-14.  For example, Dr. Karimova noted that Ms. Tilla was crying in the office because of pain, that she had tenderness around the abdominal hernia, and that Ms. Tilla was unwilling to participate in parts of the exam due to pain.  *Id.*  Ms. Tilla argues, therefore, that the ALJ engaged in improper picking and choosing from Dr. Karimova's consultative exam and relied only on those parts favorable to a finding of disability.  *Id.*

The Commissioner contends that the ALJ applied the correct legal standard when evaluating CNP Dawson's assessment of Ms. Tilla's ability to do work-related activities and that the ALJ's factual findings are supported by substantial evidence.  Doc. 17 at 6-12.  The Commissioner contends that Ms. Tilla attempts to create legal error by incorrectly stating that an other medical source opinion evidence is entitled to deference,[14] and that Ms. Tilla actually is asking this Court to reweigh the evidence assessed by the ALJ.  *Id.*  The Commissioner contends that the "period relevant"[15] evidence the ALJ discussed and relied upon in her determination supports her finding that although Ms. Tilla developed extreme symptoms for a couple of months in late 2004 and early 2005 related to Guillain-Barré syndrome, and experienced difficulty related to a high-risk pregnancy between 2008 and 2009, Ms. Tilla's symptoms did not persist past April 2011 and did

---

[14] Ms. Tilla stated in her Motion

> [w]hile the regulations do not recognize CNPs, NPs and LISWs as "acceptable medical sources," they are considered "other sources" that are entitled to deference.  *See* 20 C.F.R. § 416.913; SSR 06-03 (Opinions from "non-medical sources" who have seen claimant in their professional capacity may "properly be determined to outweigh the opinion from medical sources, including a treating source.").

Doc. 16 at 10.

[15] The Commissioners cites the ALJ's discussion of medical expert testimony by Alvin Stein, M.D., and Ira Hymoff, Ph.D.; nonexamining State agency medical and psychological consultant opinions; examining medical consultant opinion (Natavan Karimova, M.D.); and examining psychological consultant opinion (Amy DeBernardi, Psy.D.).

not cause disabling impairments.  *Id.*   The Commissioner contends, therefore, that the ALJ's RFC

that Ms. Tilla could perform light exertional work, with certain postural and environmental

limitations, is supported by substantial evidence.  *Id.*

In addressing Ms. Tilla's specific arguments related to legal error and the adequacy of the

ALJ's reasons for rejecting CNP Dawson's opinion, the Commissioner states only that ALJ's

reference to Exhibit 13F should have been 12F[16] and amounts to a mere scrivener's error that does

not require remand.  *Id.*

**B.      The ALJ Failed to Apply the Correct Legal Standards in Evaluating CNP's Dawson's Opinion and Her Reasons for Rejecting CNP Dawson's Opinion Regarding Ms. Tilla's Ability To Do Work-Related Physical Activities Are Not Supported By Substantial Evidence**

The regulations contemplate the use of information from "other sources," both medical[17]

and non-medical,[18] "to show the severity of an individual's impairment(s) and how it affects the

individual's ability to function."  *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20

C.F.R. §§ 416.902); *see* SSR 06-03p, 2006 WL 2329939, at *2.[19]  "Information from these 'other

sources' cannot establish the existence of a medically determinable impairment.  Instead, there must

---

[16] Exhibit 12F consists of 81 pages of medical records from ABQ Health Partners Pain Clinic dated January 2009 through 2015.  Tr. 801-881.

[17] For claims filed before March 27, 2017, other medical sources are defined as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapist.  SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[18] For claims filed before March 27, 2017, non-medical sources include, but are not limited to, educational personnel, such as schoolteachers, counselors, early intervention team members, developmental center workers, and daycare center workers; public and private social welfare agency personnel, rehabilitation counselors; and spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.  SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[19] SSR 06-3p is rescinded for claims filed on or after March 27, 2017.  SSR 96-2p, 2017 WL 3928298, at *1.  For claims filed after March 27, 2017, all medical sources can make evidence that are categorized and considered as medical opinions.  *Id.* at *2.

be evidence from an 'acceptable medical source'[20] for this purpose." SSR 06-03p, 2006 WL 2329939, at *2.[21]  An ALJ is required to explain the weight given to opinions from other medical sources and non-medical sources who have seen a claimant in their professional capacity, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* at *6; *see also Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 (10th Cir. 2012) (finding that ALJ was required to explain the amount of weight given to other medical source opinion or sufficiently permit reviewer to follow adjudicator's reasoning). The weight given to this evidence will vary according to the particular facts of the case, the source of the opinion, the source's qualifications, the issues that the opinion is about, and other factors, *i.e.,* how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other facts that tend to support or refute the opinion.  SSR 06-03p, 2006 WL 2329939, at *4-5.[22]

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinion.  *Langley*, 373 F.3d at 1119 (citation omitted).  Failure to do so constitutes legal error.  *See Kerwin v. Astrue*, 244 F. App'x. 880, 884 (10th Cir. 2007) (unpublished).  In addition, "[a]n ALJ is not entitled to pick and

---

[20] For claims filed before March 27, 2017, "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298.

[21] *See* fn. 18, *supra.*

[22] *Id.*

choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must ... explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

The Court will address each of Ms. Tilla's arguments related to the ALJ's evaluation of CNP Dawson's opinion in turn.

First, the Court agrees that the ALJ failed to clarify which of CNP Dawson's physical exam findings do not support her assessment. Exhibit 13F, to which the ALJ cited, clearly does not support the ALJ's reason and the Commissioner is correct that a mere typographical error does not require remand.[23] *Poppa v. Astrue*, 569 F.3d 1167, 1172 n. 5 (10th Cir. 2009) (finding "a mere scrivener's error" harmless where an ALJ mistakenly wrote that surgeries took place in 2004 instead of 2005). Here, however, even if the Court were to assume that the ALJ meant to cite Exhibit 12F, as the Commissioner contends, Exhibit 12F consists of 81 pages of records from ABQ Health Partners Pain Clinic where Ms. Tilla treated with CNP Dawson. These records reflect that CNP Dawson consistently diagnosed and treated Ms. Tilla for lower back pain, idiopathic peripheral neuropathy, incisional hernia, bulging lumbar disc, lumbar neuritis, lumbar canal stenosis, joint pain, myalgia and myositis, obesity, Guillain-Barré syndrome, and anxiety – all of which are consistent with the bases CNP Dawson identified in her medical source statement for assessing Ms. Tilla's ability to do work-related physical activities. *See* Section III.A., *supra*.

---

[23] *See* fn. 11, *supra*.

Thus, it remains unclear to the Court which records the ALJ is relying upon.  *See Gutierrez v. Colvin*, 67 F. Supp. 3d 1198, 1203 (D. Colo. 2014) (explaining that the Court is neither required— nor, indeed, empowered—to parse through the record to find specific support for the ALJ's decision, and that such generalized, global references to the record make the ALJ's opinion nearly impossible to review, and certainly do not constitute substantial evidence in support of the Commissioner's disability determination).  That said, to the extent the ALJ intended to rely on certain of CNP Dawson's physical exams from Exhibit 12F to reject CNP Dawson's opinion, she nonetheless would be required to discuss the uncontroverted and significantly probative evidence she chose not to rely upon and rejected.[24]  Here, the ALJ was neither specific about which records she was relying on from Exhibit 12F nor did she discuss probative evidence therein that she rejected.  This amounts to legal error.  *See Langley*, 373 F.3d at 1119; *Clifton*, 79 F.3d at 1009-10.

The ALJ's second explanation suffers from the same deficiencies.  The ALJ cites Exhibit 11F to support her explanation that physical exams by other providers are inconsistent with CNP Dawson's opinion.  Exhibit 11F consists of 29 pages from First Choice Community Healthcare where Ms. Tilla treated with Valerie Carrejo, M.D., from May 7, 2009, through October 11, 2011.  Tr. 773-786.  As explained in footnote 7, *supra*, Dr. Carrejo's treatment notes, some of which pre-date Ms. Tilla's date of last insured, indicate Ms. Tilla's persistent complaints of and treatment for depression and anxiety, as well as for neuropathic pain and weakness, edema, chronic back pain,

---

[24] The ALJ also failed to acknowledge or discuss that in assessing Ms. Tilla's ability to do work-related physical activities, CNP Dawson considered the "chronicity of medical history and the chronicity of findings as from **2009 to current examination**."  Tr. 771 (emphasis added).  In light of Dr. Carrejo's 2009 treatment notes, there is evidence that permits an inference of linkage with Mr. Tilla's pre-date-of-insured condition.  *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (explaining that the relevant question in the face of a retrospective diagnosis is whether there is evidence of actual disability prior to the expiration of a claimant's insured status); *see also Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (finding that post-dated-last-insured medical evidence generally is admissible in a Social Security disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition).

and pain related to Guillain-Barré syndrome, schwannoma, and abdominal hernia.[25]  Tr.  575-76,

725-29, 773-786.  Dr. Carrejo's diagnoses, therefore, are consistent with the bases CNP Dawson

identified in her medical source statement for assessing Ms. Tilla's ability to do work-related

physical activities.  Thus, even if the ALJ had been sufficiently specific about which of the physical

exams from Exhibit 11F she was relying upon, which she was not, she nonetheless failed to address

uncontroverted and significantly probative evidence from those records she chose not to rely upon

and rejected.  This amounts to legal error.  *See Langley*, 373 F.3d at 1119; *Clifton*, 79 F.3d at 1009-

10.

  Last, the ALJ cites Exhibit 4F to find that Ms. Tilla was "generally found to have normal

strength and gait, no balance issues, and no upper extremity limitations noted other than reported

pain with normal shoulder range of motion."  Tr. 1535.  Exhibit 4F is a April 11, 2011, Medical

Consultant Report prepared by examining State agency medical consultant Natavan Karimova,

M.D.[26]  Tr. 716-19.  On physical exam, Dr. Karimova noted, *inter alia*, that cervical flexion

extension, rotation and lateral flexion were within normal limits; shoulder abduction, adduction,

forward elevation, internal and external rotation and extension were within normal limits bilaterally,

albeit with pain; elbow, hand and ankle range of motion was normal bilaterally; knee extension was

within normal limits but flexion was decreased due to morbid obesity; 5/5 strength in upper and

lower extremities; and normal reflexes in supper and lower extremities.  Tr. 718.  Dr. Karimova

also noted on physical exam that Ms. Tillas was crying due to pain "all over"; that Ms. Tilla's

abdomen was tender around the abdominal hernia; that Ms. Tilla refused an examination of her

spine because it was too painful; that Ms. Tilla did not participate well with the hip examination due

---

[25] *See* fn. 7, *supra.*

[26] *See* fn. 13, *supra.*

to low back pain; and that Ms. Tilla refused to walk on her heels and walk on her toes.  Tr. 717-18.

The ALJ's reliance, therefore, on only those portions of the physical exam favorable to her position

while ignoring other evidence amounts to improper picking and choosing from the medical report.

*See Hardman*, 362 F.3d at 681.  This is error.[27]

Finally, the Court finds no error with Ms. Tilla's statement of the legal standard for

weighing and considering other medical source evidence.[28]  Additionally, the Commissioner's

argument that the "period relevant" evidence supports the ALJ's RFC and therefore supports the

ALJ's evaluation of CNP Dawson's opinion is unavailing.  As an initial matter, the Commissioner's

focus on whether the ALJ's RFC is supported by substantial evidence fails to squarely address

Ms. Tilla's argument, *i.e.,* that the ALJ failed to apply the correct legal standards and provide

adequate reasons for rejecting CNP Dawson's opinion.  That aside, the Court finds that the

evidence the Commissioner cites does not support the ALJ's rejection of CNP Dawson's opinion.

For example, the Commissioner argues that the ALJ relied on the expert testimony of medical

consultant Alvin Stein, M.D., who was called upon to help determine the onset of disability at the

February 25, 2019, administrative hearing before ALJ Weiss.  Notably, however, the ALJ accorded

only *limited weight* to Dr. Stein's opinion.  The ALJ explained that

> I accord limited weight to Dr. Stein's opinion of no severe physical impairment prior
> to October 30, 2013.  With regard to GBW, although there is no evidence of
> EMG/NCV studies prior to October 30, 2013, studies were performed in 2015 and
> 2017 and did show motor/sensory neuropathy consistent with a previous

---

[27] The Court notes that the ALJ accorded significant weight to Dr. Karimova's medical source statement that Ms. Tilla could perform light exertional work and in turn assessed that Ms. Tilla could perform light work with certain postural and environmental limitations.  Tr. 1525.  However, in doing so the ALJ failed to discuss or explain that Dr. Karimova qualified her assessment for light exertional work by stating that "[i]f needed, [Ms. Tilla] can sit cumulatively up to six hours in an 8-hour day."  Tr. 719.  Light work involves lifting no more than 20 pounds at a time and 10 pounds frequently, and involves a *good deal of walking or standing*.  20 C.F.R. §§ 404.1567(b) and 416.967(b) (emphasis added); *see also* SSR 96-8p, 1996 WL 374184, at *7 (explaining that if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted).

[28] *See* fn. 14 *supra.*

demyelinating neuropathy (17F/12; 18F/90-91).[29] Additionally, regarding claimant's back pain and hernia, although Dr. Stein cited to the record to support his opinion and physical exams were largely normal, the claimant did have positive findings on imaging for the spine and positive findings on both imaging and examination for the hernia.  These could reasonably cause pain and limitations and support a finding that they were severe.  The claimant's morbid obesity would also affect her ability to perform medium or higher work.

Tr. 1533.[30]

As for the ALJ's reliance on nonexamining State agency medical consultants, both Dr. Vorhies and Dr. Dees made their assessments of Ms. Tilla's ability to do work-related physical activities *before* CNP Dawson completed her assessment of Ms. Tilla's ability to do work-related physical activities, and there is no indication that either of them reviewed treating provider Valerie Carrejo, M.D., treatment notes prior to Ms. Tilla's date of late insured which lend support to CNP Dawson's assessment.[31]  *See* Tr. 106-07 (Findings of Fact and Analysis of Evidence);[32] *see*

---

[29] Exhibit 17F/12 is January 16, 2015, treatment note generated by Cary C. Suter, M.D., Neurology, Davita Medical Group.  Tr. 1269-72.  Dr. Suter stated therein, in pertinent part, that the nerve conduction velocities "slowed severely consistent with a previous demyelinating neuropathy as opposed to an axonal neuropathy. . . . unfortunately I can only confirm the *now 10 years out* with the severity of findings of this study that this is a permanent residual of a severe demyelinating neuropathy and I would not expect improvement over time."  Tr. 1269 (emphasis added).

[30] The ALJ's explanation is confusing to the Court.  On the one hand, the ALJ accorded only limited weight to Dr. Stein's opinion because he failed to find severe physical impairments *prior to October 30, 2013*, and specifically discussed that recent EMG/NCV studies demonstrate the presence of motor/sensory neuropathy consistent with *previous demyelinating neuropathy* related to Ms. Tilla's Guillain-Barré syndrome; while on the other hand the ALJ relied on Dr. Stein's opinion to find that Ms. Tilla's Guillian-Barré syndrome was nonsevere a step two.  Tr. 1523.  *See Langley*, 373 F.3d at 1119 (citation omitted).

[31] On April 6, 2013, nonexamining State agency medical consultant John Vorhies, Jr., M.D., reviewed Ms. Tilla's medical evidence record at the initial level of review.  Tr. 110-112.  Dr. Vorhies assessed that Ms. Tilla could perform light exertional work and that there was no evidence of tenderness or functional limitations resulting from Ms. Tilla's hernia or evidence of peripheral neuropathy.  Tr. 112.  On August 9, 2013, Tom Dees, M.D., reviewed Ms. Tilla's medical evidence record at reconsideration and affirmed Dr. Vorhies' assessment.  Tr. 140-41.  The ALJ accorded significant weight to their findings as to capacity for light work, "but limitation to occasional postural movements is more appropriate in view of her back pain and obesity, and the claimant's hypoxia supports environmental limitations, as set out in my RFC finding."  Tr. 1534.

[32] There is also no indication that the nonexamining State agency medical consultants reviewed Dr. Karimova's April 9, 2011, medical source statement in which she diagnosed Ms. Tilla with pain and decreased sensation in lower extremities related to Guillain-Barré syndrome, abdominal tenderness due to hernia, and low back pain related to diagnosis of schwannoma tumor at L4-5 (Tr. 719; *see also* fns. 13 and 26, *supra*.).  Tr. 106-07.

*generally Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (noting the significance of a recent physician's examination which found more limitations than an examination by another physician two years prior).  Additionally, the nonexamining State agency medical consultants based their assessments on having found no evidence of functional limitations from Ms. Tilla's hernia or peripheral neuropathy,[33] which findings the ALJ found to be unsupported in weighing Dr. Stein's opinion.

In sum, the Commissioner's focus on whether the ALJ's RFC is supported by substantial evidence is misplaced and fails to address Ms. Tilla's legal argument.  Moreover, the ALJ did not provide these reasons in her decision for rejecting CNP Dawson's opinion.  As such, it amounts to post hoc rationalization.  *Carpenter,* 537 F.3d at 1267 (the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision.").

### C.   Immediate Award of Benefits

Ms. Tilla asks that her case be remanded for an immediate award of benefits.  Doc. 16 at 23-24.  She argues that her case has been pending for over nine years; that it is unlikely that further fact-finding would serve any useful purpose but would merely delay the receipt of benefits; that she has already testified at three separate hearings; and that the case has been remanded twice due to harmful error on the part of the Commissioner.  *Id.*

The Commissioner contends that Ms. Tilla has not overwhelmingly established disability beginning prior to October 30, 2013, let alone December 31, 2009, and hangs her "remand for payment" hat on three non-acceptable medical source opinions that do not purport to pertain to the

---

[33] *See* fn. 31, *supra.*

relevant period and are contradicted by "at least seven opinions by acceptable medical sources that do pertain to the rather limited period relevant to this case."[34]  Doc. 17 at 15-16.

District courts have discretion to remand either for further administrative proceedings or for an immediate award of benefits.  *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, courts should consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.' " *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (citation omitted) (quoting *Harris v. Sec'y of Health & Human Servs.,* 821 F.2d 541, 545 (10th Cir. 1987) (remanding for an immediate award of benefits where, *inter alia*, the application had been pending for more than five years)). When the Commissioner has failed to satisfy her burden of proof at step five, and when there has been a long delay as a result of her erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate.  *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five[ ] and the long delay [of at least four years] that has already occurred as a result of the Secretary's erroneous disposition of the proceedings").  The Commissioner "is not entitled to adjudicate a case *ad infinitum* until she correctly applies the proper legal standard and gathers evidence to support her conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

This case has been pending for nearly ten years and concerns whether Ms. Tilla was disabled between December 22, 2004, and October 30, 2013.  The medical evidence is complete as

---

[34] The Court has addressed the medical consultant opinion evidence related to Ms. Tilla's ability to do work-related physical activities.  Certain of these opinions relate to Ms. Tilla's ability to do work-related *mental* activities, which the Court has not addressed here having found error with respect to the ALJ's evaluation of CNP Dawson's opinion related to Ms. Tilla's ability to do work-related physical activities.

to this time period.  There have already been three administrative hearings and three decisions by ALJs.  In each instance, Ms. Tilla met her burden to show disability at the first four steps of the five-step sequential analysis.[35]  Additionally, this case has already been remanded twice for further administrative proceedings based on ALJ Weiss's failure to apply the correct legal standards in determining Ms. Tilla's onset disability date and failure to apply the correct legal standard when evaluating medical opinion evidence.  Despite these remands, the Commissioner, for the third time, has failed to meet her burden at step five by failing to apply the correct legal standards in evaluating medical opinion evidence and failing to provide adequate reasons supported by substantial evidence for rejecting medical opinion evidence.

Based on the foregoing, and because the Court finds that further fact finding would not serve any useful purpose but would merely delay the receipt of benefits, the Court declines to remand a third time to give the Commissioner one more opportunity to meet her burden.  As the Tenth Circuit has instructed, the Commissioner "is not entitled to adjudicate a case *ad infinitum* until she correctly applies the proper legal standard and gathers evidence to support her conclusion."  *Sisco,* 10 F.3d at 746.  Therefore, as in *Ragland*, the Court will exercise its discretion and remand for an immediate award of benefits.

---

[35] The Commissioner argues that Ms. Tilla has failed to "overwhelmingly establish" that she became disabled by a certain date.  However, this is not the standard and the Commissioner does not cite any authority that suggests otherwise.  The claimant has the initial burden of establishing a disability in the first four steps of the sequential analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987).  The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*; *see also Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.") (citation omitted); *see also* 20 C.F.R. § 416.912(a) ("Responsibility for Evidence") ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled…").

### IV.  <u>Conclusion</u>

Ms. Tilla's Motion to Reverse and Remand For Rehearing With Supporting Memorandum

(Doc. 16) is **GRANTED.**   The Commissioner's final decision is reversed and this case is remanded

for an **IMMEDIATE AWARD OF BENEFITS**.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**